IN THE UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LARRY WEBER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05-CV-165-JHP-SAJ |
| | ) | |
| GE GROUP LIFE ASSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## **ORDER**

Now before the Court is Plaintiff's Motion for Summary Judgment, Defendant, GE Group Life Assurance Company's ("GE"), Response and Plaintiff's Reply. Plaintiff moves the Court to find GE's decision to deny benefits was arbitrary and capricious. GE responds that the denial of benefits was supported by substantial evidence and the language in the Certificate governed the claim

29 U.S.C. §1132(a)(1)(B) governs Plaintiff's claims for benefits which is treated as an appeal. *See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-63 (1987).* Specifically, the court is conducting an administrative review, much like cases under the Administrative Procedures Act. *See e.g., Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)(requiring district courts to apply appellate standard of review to Plan's decision); Sandoval v. Aetna Life & Casualty Ins. Co., 967 F.2d 377 (10th Cir. 1992)(requiring district courts to confine their review to the "administrative record" consisting of the arguments and authorities submitted to or considered by the plan's decision maker at the time of its decision).* Jury trials are improper. *Adams v. Cyprus Amax Mineral Co., 149 F.3d 1156, 1160 (10th Cir. 1998).*

In reviewing GE's decision denying Plaintiff's claim for benefits, the court must apply an appellate standard of review (arbitrary or capricious or de novo). *See Bruch, 489 U.S. at 115.* Under ERISA, "a denial of benefits challenged under §1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to

determine eligibility for benefits or to construe the terms of the plan." *See Id.; accord Ray v. UNUM Life Insurance Co.*, 314 F.3d 482, 485-86 (10th Cir. 2002); *Nance v. Sun Life Assurance Co.*, 294 F.3d 1263, 1266 (10th Cir. 2002); *Hall v. UNUM Life Insurance Co.*, 300 F.3d 1197 (10th Cir. 2002); *Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998); *Sandoval*, 967 F.2d at 378.

In the instant case, the Certificate states that "GE Group Life Assurance Company is charged with the obligation, and possesses discretionary authority to make claim, eligibility and other administrative determinations regarding those policies, and to interpret the meaning of their terms and language." (AR 108). It is further stated in this section that as Claims Fiduciary, GEGLAC is "the sole judge of the standard of proof required in any claim for benefits and/or in any question of eligibility for benefits." (AR 108). This language is sufficient to grant discretionary authority to GE.

When the plan fiduciary is operating under a conflict of interest, that fact is taken into consideration when deciding the amount of deference to be applied. *See Fought v. Unum Life Ins. Co. Of Am.*, 379 F.3d 997, 1006 (10th Cir. 2004). Under Tenth Circuit law, when the decision-maker is also responsible for paying benefits, there is an inherent conflict of interest. *Id.* Under those circumstances, the burden shifts to the defendant to prove "that it's interpretation of the terms of the plan is reasonable and that its application of those terms to the claimant is supported by substantial evidence." *Id.* In the instant case, GE concedes that it operated under an inherent conflict of interest. (Dkt.#58 at 5).

Plaintiff contends that GE's denial of benefits in this case was arbitrary and capricious under the applicable standard of review. Under the arbitrary and capricious standard of review, there must be "[s]ubstantial evidence . . . that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker. Substantial evidence requires more than a scintilla but less than a preponderance." *Sandoval*, 967 F.2d at 382. Thus, GE's decision –

> need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within [its] knowledge to counter a claim that it was arbitrary or capricious . . . The decision will be upheld unless it is not grounded on any reasonable basis . . . The reviewing court need only assure that [its] decision falls somewhere on the continuum of reasonableness- even if on the low end.

*Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999).

Another ERISA principle applicable to the claim for benefits is that judicial review of GE's final decision must be confined to the "administrative record" consisting of the arguments and evidence that were submitted to or considered by GE at the time of its decision. *See Nance v. Sun Life Assurance Co.*, 294 F.3d 1263, 1269 (10th Cir. 2002); *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999); *Chambers v. Family Health Plan Corp.*, 100 F.3d 818 (10th Cir. 1996); *Sandoval*, 967 F.2d at 380. Thus, evidence outside the record, including extraneous exhibits, depositions and trial testimony cannot be considered by the court.[1]

It is Plaintiff's responsibility to produce evidence to the employer. In *Sandoval, 967 F.2d at 380*, the Tenth Circuit held:

> If a plan participant fails to bring evidence to the attention of the administrator, the participant cannot complain of the administrator's failure to consider this evidence. [The participant] is not entitled a second chance to prove his disability.

*967 F.2d at 381.* ERISA and Tenth Circuit precedent require Plaintiff to submit all evidence which he or she considered to be relevant during the claims process, or during the internal appeal process. *See Id.*

Therefore, under the arbitrary and capricious standard, this court must uphold Defendant's decision so long as it is supported by "substantial evidence." *Sandavol, 967 F.2d at 382.* The court may only reverse Defendant's decision if the decision was not grounded on "any reasonable basis." *Kimber, 196 F.3d at 1098.*

The record reveals Shelley Clark Weber was hired by Winner Communications, Inc. ("WinnerComm") as a full-time employee on September 23, 2002. Her New Hire Enrollment Request form stated she was to work 40 hours a week and her basic annual earnings were $26,500.

On March 7, 2003, Ms. Weber completed another Enrollment Request form for the regular

---

[1] There are many other non-traditional principles that apply in these cases. *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41 (1987)*(state law claims, theories and requests for relief are preempted)*; there is no jury trial, Adams v. Cyprus Amax Mineral Co., 149 F.3d 1156, 1160 (10th Cir. 1998); Lafoy v. HMO Colo., 988 F.2d 97 (10th Cir. 1993)(only equitable remedies are permitted); Straub v. Western Union Tel.Co., 851 F.2d 1262, 1265-66 (10th Cir. 1988)(the written terms of the plan govern).

group health benefits offered by WinnerComm. This form states she had been a full-time employee since September 23, 2002. It also states Ms. Weber was an active employee working 40 hours a week, with basic annual earnings of $26,500.

Among the group health benefits provided by WinnerComm was a basic life / accidental death and dismemberment policy under which Ms. Weber elected coverage. Defendant contends this policy was a "group health benefit" and further alleges Ms. Weber was automatically enrolled under that coverage. With basic annual earnings of $26,500, Ms. Weber was eligible for $53,000 in basic life insurance coverage.[2]

On March 7, 2003, Ms. Weber also completed a separate Voluntary Life Enrollment Application. This Application states Ms. Weber was employed by WinnerComm full-time on September 23, 2002, and had basic annual earnings of $26,500. Ms. Weber enrolled for $100,000 of voluntary life insurance.

On April 14, 2003, GE wrote to WinnerComm that WinnerComm's request for group voluntary life insurance coverage was approved effective May 1, 2003. GE stated in that letter that "[c]overage will be extended to your eligible employees actively at work on the effective date noted above, otherwise on their return to active service." The policy does not contain a limitation for a pre-existing condition.

The Certificate for the Voluntary Life Policy contains an Insurance Schedule which states that each full-time employee is eligible and there is no waiting period for eligibility. Other provisions of the policy state that the effective date of insurance coverage will be judged in part based on whether an employee is "Actively at Work." "Actively at Work," is defined in the policy as the following:

> Effective Date of Insurance
>
> Once you have met the Conditions of Insurability, you will be insured under the policy on the latest of:
>
> 1. The date you become eligible;
> 2. The date we approve any Evidence of Insurability we require; or

---

[2]. This basic life insurance coverage was also with GE. GE paid the benefits due under the basic life insurance, and therefore coverage under the basic life insurance policy is not at issue.

      3. The date shown in our approval of your request for insurance.

      You must, however, be Actively at Work on that date. Otherwise, you will be insured on the date you are again Actively at Work. . . .

      You are actively at work on any date if on that date you are:

1.     Working at the Employer's ususal place of business or at such place or places that the Employer's normal course of business may require;

2.     Performing all of the duties of your job on a full-time basis; and

3.     Not confined in any institution providing care or treatment of physical or mental infirmities.

      Ms. Weber began paying the required premium for the Voluntary Life Policy on May 1, 2003, by way of payroll deduction. The Administrative Record reflects the Voluntary Life Policy was paid through December 1, 2003. Ms. Weber succumbed to cancer and passed away on September 9, 2003, at the age of 35. She was survived by her husband and a 3 year old son.

      On September 19, 2003, Janessa Devore, Manager of Personnel for WinnerComm, signed the "Employer's Statement" portion of a Notice of Claim/Proof of Death form submitted to GE. By signing this statement, Ms. Devore "certified that the statements contained above are true to the best of our knowledge and belief." These statements included (1) Ms. Weber's first date of employment was September 23, 2002, (2) the date Ms. Weber last worked on a full-time basis was May 16, 2003, (3) the amount of Ms. Weber's voluntary life insurance was $100,000 and (4) the date of Ms. Weber's last salary change was "none."

      On September 23, 2003, Clark James, the broker who sold the voluntary life insurance policy, mailed the Notice of Claim to GE. Mr. James stated in his letter: "Please find the enclosed death claim for Shelley D. Clark Weber, an employee of WinnerComm, Inc. This employee was covered under both the basic life and voluntary life plans."

      The Notice of Claim form WinnerComm's Ms. Devore signed and Clark James sent to GE states:

            Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or state-

>ment of claim containing any materially false information or conceals
>for the purpose of misleading, information concerning any fact
>material thereto . . .commits a fraudulent insurance act which . . .
>is a crime and subjects such person to criminal and civil penalties.

The Administrative Record also contains a handwritten note from an unidentified GE employee, which note appears to be dated October 3, 2003. The note states in part:

>Shelley Clark Weber . . .died recently (date not known). Broker wanted
>to verify that GE not looking for a way to deny claim as EE has not
>worked 30 plus hours per week since May 2003. She had cancer but
>continued to work from home or at office if she could.
>
>Assured them that May-Oct if out due to illness would not prompt us to
>perform any detailed investigation regarding eligibility. EE is on bill
>and as long as she worked FT on/after eff date and not out longer than
>12 mos due to illness, we wouldn't question it.

The Administrative Record also contains a handwritten note by "Marie" dated October 6, 2003. The note states: "Calling John James to discuss claim for Shelley Clark . . . ." At the end of the note, Marie wrote: "full time - yes." The Administrative Record also verifies that the only reason Ms. Weber was absent from work was due to illness.

Despite the assurance made to the broker that GE would not question the claim as long as Ms. Weber was working full-time after the effective date of the insurance policy (May 1, 2003) and was absent due only to illness, and despite WinnerComm's certification that Ms. Weber was a full-time employee until at least May 16, 2003, GE requested certain payroll and time records for Ms. Weber. The only payroll and time records requested by GE were from May 1, 2003 through May 16, 2003. As GE concedes, these payroll records show that Ms. Weber worked after May 1, 2003. Indeed, these records reflect that Ms. Weber worked May 12, 13 14 and 15, 2003.

Although GE requested payroll records for the May 1-16, 2003 time period only, GE was on notice from the broker who submitted the claim that Ms. Weber worked long after May 16. The Administrative Record contains a handwritten note from "Marie" dated November 21, 2003, which states, in part: "Amy called regarding claim for Shelley Clark Weber – advised broker contacted her – she spoke with the firm advised that Shelley worked up until her death . . . ." That same day "Marie" made a note from a phone conversation she had with John James, one of the brokers, in

which she wrote: "he advised that he is aware that she worked up until two weeks prior to her death." The Administrative Record does not contain any evidence that GE had any further contact with either the broker or, more importantly, with WinnerComm, concerning Ms. Weber's work for WinnerComm between May 16, 2003, and the date of her death in September 2003.

On October 13, 2003, Janessa Devore of WinnerComm faxed to "Marie" Shelley's "New-Hire" form which showed her full-time hire date was September 23, 2002. Ms. Devore wrote on the fax cover sheet: "Please call with any questions." The Administrative Record does not reflect GE had any further communications with Ms. Devore or anybody else at WinnerComm regarding Ms. Weber's status or hours worked. In *Gaither v. Aetna Life Ins. Co., 394 F.3d 792, 807 (10th Cir. 2004)*, the Tenth Circuit Court of Appeals asserted the principle "that fiduciaries cannot shut their eyes to readily available information when evidence in the record suggests that the information might confirm the beneficiary's theory of entitlement . . . ." [3]

On December 3, 2003, GE wrote Plaintiff denying benefits under the Voluntary Life Policy. The letter concludes that Ms. Weber "never became insured under this plan," stating: "As Shelley Clark Weber did not fulfill the "Actively at Work" requirements to become insured under the plan at the time of her death on September 9, 2003, she was not eligible for Voluntary Life Insurance coverage under this policy and we must advise you that no Voluntary Life Insurance Benefit is due."

Plaintiff contends that GE's denial of benefits in this case was arbitrary and capricious under the applicable standard of review. Plaintiff argues Ms. Weber was employed by WinnerComm on a full-time basis on and after May 1, 2003, and met the "Actively at Work" definition of the policy,

---

[3] The Court notes GE's statement that "after May 1, 2003, Ms. Clark-Weber worked on a few days, but never a complete day . . ." (Defendant's Response Brief at 6). GE cites the Administrative Record at page 41 for its statement; but as noted by Plaintiff, page 41 only shows the hours Ms. Weber worked between May 1 and May 15, 2003. Plaintiff contends GE's statement is false, and GE knows it is false as evidenced by Ex.D to Plaintiff's Motion for Partial Summary Judgment and Brief in Support (Dkt.# 59). This exhibit demonstrates Ms. Weber worked for several days, some for 8 hours, for several weeks after May 15. These hours are not part of the Administrative Record because GE never asked WinnerComm for Ms. Weber's hours after May 16, 2003. While this Court expressly states it has not considered this exhibit or the additional hours worked by Ms. Weber in reaching the decision in the instant Order, and while it may be appropriate for GE to argue the Administrative Record represents which days and hours Ms. Weber worked, it is misleading to leave the Court with the false impression that Ms. Weber never worked after May 15 when GE knows, in fact, that Ms. Weber worked for several weeks after May 15.

at the latest, on May 12, 2003. The uncontroverted record reflects the only reason Ms. Weber was absent from work was due to illness, not because of any change in her employment status or change in the number of hours she was to work.

Accordingly, the Court finds (1) Ms. Weber signed up for $100,000 in life insurance benefits under the Certificate, (2) the effective date of the Certificate was May 1, 2003, (3) Ms. Weber paid premiums (which premiums were accepted by GE) for the life insurance coverage beginning May 1, 2003, (4) Ms. Weber was employed by WinnerComm on a full-time basis on and after May 1, 2003, and (5) Ms. Weber met the "Actively at Work" definition, at the latest, on May 12, 2003.

GE contends the policy defines the term "Employee," as someone who "regularly works at least 30 hours per week at the Employer's ususal place of business or such other place that the Employer's normal course of business may require . . ." GE alleges Ms. Weber did not "regularly work at least 30 hours per week" at any time on or after the date the subject coverage went into effect. Plaintiff argues the word "Employee" is not used in the "Date of Eligibility (Waiting Period)," "Conditions of Insurability," or "Effective Date of Insurance" provisions.

GE's argument that there is an additional requirement in the policy which required Ms. Weber to have worked at least 30 hours in a week after May 1, 2003, the effective date of the policy, in order to become eligible for coverage, is not supported by the clear language of the policy. GE's argument is based on language in the "Definitions" section of the Certificate. On page 6 of the Certificate is the following provision:

"Employee"

Someone who meets the following requirements:

1. Is an employee of the Employer, as stated in PART 1: Insurance Schedule;
2. Regularly works at least 30 hours per week at the Employer's ususal place of business or at such place or places that the Employer's normal course of business may require; unless otherwise stated in PART 1: Insurance Schedule;
3. Is paid for such work in accordance with applicable wage and hour laws; and
4. Is in a classification eligible for insurance as shown in the Employer's Plan of Insurance or as noted in the Insurance Schedule if applicable.

The "Definitions" section of the Certificate, standing alone, does not add to or subtract from the rights and obligations under the Certificate. It is only when a defined term is used in a

substantive part of the Certificate that the definition has any relevance. The pertinent provisions of the Certificate setting forth "Date of Eligibility (Waiting Period)," "Conditions of Insurability," "Effective Date of Insurance," and "Actively at Work" do not use the word "employee." Therefore, GE's reliance on the "30 hours per week" language in the definition of "employee" is not relevant.

Additionally, the "30 hours per week" language is qualified by the phrase "unless otherwise stated in Part 1: Insurance Schedule." The definition of "Employee" in Part 1: Insurance Schedule does not have a 30 hour per week requirement. Thus, the "30 hours per week" language does not apply.

GE also contends the "Actively at Work" definition requires that Ms. Weber not only had to be performing the duties of her job on a full-time basis, but also working 30 hours per week. "Actively at Work" definition expressly refers to "on any day," and does not require an employee to work 30 or more hours per week. The plain language of the Actively at Work definition provides that one is Actively at Work on any day if on that day the employee meets the conditions listed. As the Tenth Circuit held in *Fought*, the availability of clearer contract language is relevant to the Court's analysis. The Court finds clearer language was available to GE if it intended to inform an employee that 30 hours per week was required to be eligible for benefits.

Finally, GE argues for the first time in its Response Brief at page 11 that Ms. Weber did not meet the "Actively at Work" definition because she did not "work full time for a single day." The "Actively at Work" definition does not require an employee "to work full time for a single day." Rather, it requires an employee "to perform [ ] all of the duties of your job on a full-time basis." The requirement that an employee work full-time is not qualified by a specific number of hours. Janessa Devore, Manager of Personnel for WinnerComm, signed a statement certifying that Ms. Weber "last worked on a full-time basis" on May 16, 2003. Ms. Devore's certification was on a form drafted and provided by GE, which form notified Ms. Devore if she provided false or misleading information she commits a fraudulent act subjecting her to criminal and civil penalties.

Accordingly, the Court finds GE's decision denying Plaintiff's claim for long-term disability was not supported by the evidence contained in the administrative record and was arbitrary and capricious.

**IT IS SO ORDERED** this 9th of March, 2007.

James H. Payne
United States District Judge
Northern District of Oklahoma